LOVE *v*. GRAND INTERNATIONAL DIVISION OF THE BROTHER-
HOOD OF LOCOMOTIVE ENGINEERS.

Opinion delivered July 7, 1919.

1.  LABOR UNIONS—EXPULSION OF MEMBERS.—*Held*, that the Grand In-
ternational Division of the Brotherhood of Locomotive Engineers
possess constitutional authority to expel members of subordinate
divisions of the brotherhood, and to order the division, of which
the expelled brother was a member, to enforce the order of expul-
sion.

2.  LABOR UNIONS—CONTROL OF ACTS OF MEMBERS—ISSUING CIRCULARS
AND PETITIONS—EXPULSION OF MEMBER.—The Brotherhood of Lo-
comotive Engineers, *held*, under its constitution and by-laws, to
have authority to expel from membership a member of a subor-
dinate division for issuing or signing circulars or any form of
petition in relation to the business of the brotherhood, among the
members, or others.

3.  LABOR UNIONS—EXPULSION OF MEMBER—GROUNDS.—The expulsion
of a member of a subordinate division of the Brotherhood of Lo-
comotive Engineers by order of the Grand International Division
of said brotherhood, *held* properly brought about under the con-
stitution and by-laws of the order.

4.  LABOR UNIONS — EXPULSION OF MEMBER — PROCEDURE.—*Held*, the
Grand International Division of the Brotherhood of Locomotive
Engineers, assembled in triennial convention and possessing the
authority to expel a member of a subordinate division of the order
for a violation of its by-laws, may delegate the investigation of
charges against such member to a committee.

Appeal from Pulaski Chancery Court; *John E. Mar-
tineau*, Chancellor; affirmed.

*J. C. Marshall*, for appellant.

1.  The Constitution of the G. I. D. did not invest
it with jurisdiction to expel members of subordinate divi-
sions, but with appellate jurisdiction only.  The power
of disfranchisement must be conferred by statute or
charter and is not sustained otherwise as an incidental
power except where the member has been convicted
of infamous crime by a competent court, or some act
against the society tending to its destruction or injury.
Thompson on Corp., § 4688; 20 Wis. 63; 4 Am. Dec. (2

Binn.) 453; 31 Mich 458; 1 Bacon on Ben. Soc., § 88-97; 92 Atl. 41; 8 Hun. 216.

The law does not favor forfeitures and the facts must be clearly established by satisfactory proof. 2 How. Pr. 228. The burden is on defendant to show forfeiture of rights under the charter and by-laws. 90 Dec. 89; 176 S. W. 516; 108 Ill. App. 47; 70 *Id.* 95; 78 N. E. 469; 80 Ark. 190; 19 Pa. Sup. Ct. 272.

Where the corporation or society owns property, a member can not be expelled unless this power is contained in the charter. 63 Am. Dec. 772, note; 7 C. J., § § 24, 28, 32, 38; 1 Bacon on Ben. Soc., § § 83, 88, 98-9. To prove expulsion of a member, expulsion in compliance with the laws of the order must be shown. 67 Ill. App. 576.

There are no presumptions in case of forfeiture of property or other important rights for the law is opposed to summary proceedings involving forfeitures. 1 Bacon, Ben. Soc., § 110. Whoever charges another with culpable omission of duty or breach thereof must prove it. 13 Am. Dec. 304; 25 *Id.* 108; 16 Cyc. 927-8.

A member of an incorporated benevolent society can not be expelled for a private quarrel under a by-law, for expulsion for vilifying another member and generally the use of contemptious, insulting or disrespectful language by one member to another, or even an officer, is not sufficient ground of expulsion. Thompson on Corp., § 4674.

Mere defamation of a member is no cause of discipline even. 28 N. W. 802; 35 N. Y. S. 214; 4 Am. Dec. 453; 42 Atl. 118.

2. The expulsion is void, as there was no by-law authorizing it. Cases *supra;* 7 C. J. 1101; Thompson on Corp.. § 4671; 1 Serg. & R. 254. See also, 15 Pa. St. 251; 89 N. Y. S. 921; 7 C. J. 1011-17.

Notice must be given. The power of expulsion belongs to the society alone unless by fundamental article or by-law it is transferred to a select number. 14 Phila.

233; 22 Md. 156; 40 Hun. 546; Thompson on Corp., §
4691.

No copy of the charges was ever served upon accused,
and they certainly were entitled to notice and a hearing.
1 El. & El. 545; Thompson on Corp., § 4692; 35 N. Y.
Sup. 214; 31 N. E. 776; 10 Daly (N. Y.) 262. The charges
must be definite and specific or the expulsion is void.   28
N. W. 802; 56 N. Y. S. 1052; 46 Hun. 273; see also, 7
C. J. 1116-8; 105 Atl. 717; 52 L. R. A. (N. S.) 817, and
note.

*House, Rector & House,* for appellee.

1.   The section of the constitution and by-laws un-
der which the G. I. D. proceeded is not invalid, and the
division had ample power of expulsion as punishment
for the offense charged.   The authorities cited for ap-
pellant establish the proposition that a benefit society
has the right to expel a member for any offense against
the members duty to the organization.   The pamphlet
which appellants admit they prepared and circulated
was such an offense.   This court can not review the evi-
dence or pass on the merits.   Bacon on Ben. Soc., § § 48
and 613.   Here the lodge had jurisdiction and proceeded
regularly and the by-law was valid.   48 S. E., p. 580.

The failure of appellants to exhaust their remedies
afforded them closes the door of the courts.   102 Tex.
89; 19 A. & E. Ann. Cases, 1250.   To the same effect are
156 N. W. 658; 137 Mass. 368; 86 Mich. 626; 65 Kans.
452; 144 Mass. 175; 157 Ill. 108; 26 L. R. A. 98; Bacon
on Ben. Soc., § 625; 86 Me. 434.

The order had jurisdiction, the by-law is valid and
there were no irregularities in the trial, or if there were
they were waived.   70 L. R. A. 188; 91 S. W. 834; 108
*Id.* 454; Niblack on Ben. Soc., § 35 to 39; 107 Cal. 74;
70 Pac. 352.

2.   Section 3 of the Constitution and 92 of the stat-
utes and the fraternal obligation of appellants are abun-
dant law for the institution of the charges under which
appellants were tried.   98 S. E. 580; 31 N. E. 776; 137

Mass. 329; 113 S. W. 144. The finding of the highest court of the brotherhood is conclusive and binding here. 24 Oh. L. J. 314; 116 Pa. 391; 84 Ky. 490; 52 Pa. 125; 30 N. Y. Sup. 885; 53 N. J. L. 536; 61 Ill. App. 597; 49 L. R. A. 353.

3. The expulsion is not invalid because the G. I. D. violated its own rules or because of insufficiency of charge and notice. 76 Kans. 516; 4 Cyc. 303. An appearance and defense waives notice and insufficiency of charge. 103 N. Y. Sup. 1003; 118 N. Y. 101; 24 N. Y. Sup. 114; 28 Mich. 261; 110 Cal. 308; 112 Tenn. 664; 70 Pac. 352.

As to the power of the courts to review the proceedings, see Niblack on Ben. Soc., § 55; 65 Atl. 829; 121 N. Y. 284; 155 *Id.* 83.

Formalities in charge or notice are waived by appearance. 24 R. I. 550. All presumptions favor the validity and legality of the proceedings in the administration of the society's disciplinary laws. Speer, Equity, 87; 64 How. Pr. 442.

4. It was competent to delegate to a special committee the duty of trying the charges. 157 Mass. 128; 31 N. E. 776. See also, 28 Mich. 261; 116 Pa. 391; 76 Tex. 552; 110 Cal. 297; 129 Ill. 298; 52 N. J. L. 455; 54 Mo. App. 468.

5. Both the committee and the main body acted in good faith and gave appellants a fair and impartial trial and the chancellor so found and the finding should not be disturbed. 86 Ark. 622; 129 *Id.* 297-301; *Ib.* 583; 130 *Id.* 178 135 *Id.* 607.

HUMPHREYS, J. Appellants instituted suit against appellees in the Pulaski Chancery Court to prevent them from interfering with their membership in the Brotherhood of Locomotive Engineers and their property rights, consisting of insurance, traveling cards, etc., incident to their membership. In substance, they alleged that the Grand International Division of said Brotherhood, commonly known as the "G. I. D.," was a duly

organized Ohio corporation, located at Cleveland, Ohio, with power to do business in Arkansas, and possessing supreme authority in matters of said brotherhood; that, without authority, and contrary to the laws of the Brotherhood and the land, said G. I. D., while sitting in triennial session in Cleveland, on May 18, 1918, expelled appellants from the Brotherhood, thereby injuring them in their property rights; that said G. I. D. ordered local division No. 554, in which they held their membership, to put the order of expulsion into effect. Based upon these allegations, appellants prayed for cancellation of the order of expulsion, the non-enforcement thereof, and reinstatement as members.

Appellees admitted the expulsion and order for the enforcement of same but denied that it was without authority under the constitution and by-laws of the Brotherhood to expel them and direct the enforcement of the order.

(1)    The cause was heard upon the pleadings, depositions and exhibits thereto, from which the chancellor found that the Grand International Division of the Brotherhood of Locomotive Engineers possessed constitutional authority to expel members of subordinate divisions of the Brotherhood and to order the division of which the expelled brother was a member, to enforce the order of expulsion; that appellants were charged, fairly tried and expelled for violating a by-law of the order. In keeping with the findings, the court dismissed the petition of appellants for want of equity. From the findings and decree of the chancellor, an appeal has been prosecuted to this court, and it is before us for trial *de novo.*

Several years before the institution of this suit, F. C. Stelter sued the Rock Island Railroad on account of injuries received while operating one of its engines. The railroad company compromised the suit with Stelter, but refused to re-employ him, contrary, Stelter claimed, to its contract with the order. He attempted to present these claims, first, to his local division, next to the Grand

Chief Engineer, and then to the Grand International Division, but failed to get relief. In preparing and presenting the claims, he was assisted by J. C. Love, one of the appellants in this cause. In an attempt to get the claims of appellant Stelter considered, appellants attended the convention of the G. I. D. in 1918. While there, the following written charges were preferred against them by E. S. Pritchard, a delegate to the G. I. D.:

"To Officers and Members of the Grand International Division:

"Sirs: I herewith prefer charges against member J. C. Love and member F. C. Stelter of Division No. 554, for violation of obligation, and submit the attacking pamphlet hereto as evidence."

The attacking pamphlet attached as evidence consisted in a bill of particulars and a complete statement of Stelter's case and his fruitless attempts to obtain redress from the local division, the officials and the G. I. D. at its first convention. In substance, it charged that certain officers of the G. I. D., including the Chief Executive of the Order, prevented him from obtaining redress through deceit, falsehood, tyrannical influences, etc.

The charges were referred to a committee of five for trial and report. Appellants appeared before the committee and admitted that the attacking pamphlet was signed by J. C. Love of Division No. 554, and prepared and circulated by him with the consent and approval of appellant F. C. Stelter.

The following report was filed by the committee:

"Sirs and Brothers: We, your committee appointed in the case of J. C. Love and F. C. Stelter of Division No. 554, for violation of obligation, beg to report that after due consideration of all the evidence and examination of all the witnesses, we find that they are guilty as charged, and recommend their expulsion."

After refusing to allow appellants to appear before the body, the G. I. D. voted to expel them. The motion was then adopted conferring power on the Grand Chief

Engineer and the Advisory Board to hear and reinstate parties who had been suspended.

The evidence on the part of appellants tended to show that the sitting of the committee was an informal affair; that when they appeared before such of them as were present, they did not intend to appear for trial, but thought they were appearing for the purpose of presenting Stelter's claims set forth in the attacking pamphlet, and had no idea that they were being tried on the charges preferred against them; that they did not understand that the questions propounded to them as to authorship and circulation of the pamphlet were propounded in the course of a trial; that they left the committee, or such members as were present, believing that, in case they were to be tried, they would receive a copy of the written charges and notice of the time and place of trial.

The evidence on the part of the committee tended to show that appellants were present and understood the nature of the charge against them; that they were being tried on it; and that on the trial they admitted authorship and responsibility for the circulation of the pamphlet.

Appellants first insist that the constitution of the Grand International Brotherhood of Engineers did not invest the G. I. D. with original jurisdiction to expel the members of the subordinate divisions thereof, but in that respect, with appellate jurisdiction only. It is provided in the third section of the constitution of the Order that: "The G. I. D. shall have exclusive jurisdiction over all subjects pertaining to the Brotherhood, and its enactments and decisions upon all questions are the supreme law of the Brotherhood, and all divisions and members of the Order shall render true obedience thereto.

\* \* \* \* \* \*

"It shall also have full power to order the expulsion of a member of any division, and in the event of such division failing to comply with such order, the Grand Chief shall recall their charter and shall hold the same

until the order is complied with or decision is reversed by the G. I. D.; and such expelled member shall not be reinstated except by action of the G. I. D."

It would indeed be a restricted construction to hold that only appellate jurisdiction was conferred upon the G. I. D. by this section of the constitution. It is hard to conceive what broader or more specific language could be invoked in an attempt to confer *all* power upon a body. than was utilized in this section. The first clause confers jurisdiction on the G. I. D. over *all subjects* pertaining to the Brotherhood; the next makes the enactments and *decisions* the *supreme law* of the Brotherhood, and the next exacts complete obedience of every member of the Order to the laws enacted, or *decisions* made by the G. I. D., touching any subject concerning the Brotherhood. If this is not an investment of *all power* in a body by plain, unambiguous language, we are unable to detect the restriction or limitation. Touching upon the unlimited power vested in the G. I. D. by the first paragraph of this section of the constitution of the Order, it was said by the court in the case of *Simpson and Smith* v. *Grand International Brotherhood of Locomotive Engineers,* 98 S. E. 580, that: "The powers thus vested in it expressly exclude any presumption of intent to adopt the limitations and rules of the civil laws, respecting either procedure or substantive rights in the Order."

Again, in the latter clause of the same section, full power is vested in the G. I. D. to order the expulsion of a member of any division. Ample authority is granted the subordinate divisions of the order by other sections of the constitution to expel their members without an order from the G. I. D. In case of an affirmance of an expulsion on appeal to the G. I. D., an order to the division to expel the member would therefore be an unnecessary or superfluous order. In case of reversal of an expulsion on appeal to the G. I. D., certainly no such order would, or could, be issued. Consequently, it is plain that the authority conferred on the G. I. D. to order a division to expel a member grows out of an exercise of

its original jurisdiction. Had the power thus conferred related to other than an exercise of original jurisdiction, the authority would not have been to order expulsion but to order the trial and expulsion of a member, if found guilty. The order for the imposition of the penalty presupposes a trial and conviction.

(2)   Again, it is insisted by appellants that there was no by-law establishing the offense charged and fixing expulsion as the penalty. Section 92 of the constitution of the Order provides  that:  "All divisions, or members of divisions, are prohibited from issuing circulars or signing any form of petition relative to Brotherhood business among members of the Brotherhood or others. If issued by a division its charter shall be suspended, and the length of such suspension shall be at the discretion of the Grand Chief Engineer. If issued or signed by a member, he shall be suspended or expelled; provided that the foregoing shall not prevent or hinder in any manner any official or division of the Brotherhood in properly conducting the business of the organization as to sending out notices, reports, etc., for the purpose of securing or giving information."

This by-law prevents lay members of the Order from *issuing* or *signing circulars,* or any form of *petition* in relation to the business of the *Brotherhood* among the members or others. The attacking pamphlet was a circular or petition relating to Brotherhood business, and, therefore, clearly inhibited by the law of the Order.

(3)   Appellants also insist that the charge was not sufficiently definite to bring it under section 92 of statutes, or any other by-law of the Order. The charge, in substance, is the violation of obligation, evidenced by the attached attacking pamphlet. Owing to the length of the pamphlet, it is impracticable to incorporate it in this opinion. Suffice it to say that it is a circular or petition relative to the conduct of Division No. 554, the Grand Chief Engineer and the first triennial convention of the G. I. D. in relation to the claim of appellant F. C. Stelter, concerning an alleged violation of a contract be-

tween the Rock Island Railroad and the Order, in reference to the railroad's refusal to re-employ him, after his suit against it was compromised. The subject matter contained in the pamphlet related to the business of the Brotherhood among the members as well as others. The charge was sufficiently definite and specific.

It is also insisted by appellants that the mode of procedure adopted by the G. I. D. in the trial was contrary to the by-laws of the Order. We have examined the statutes of the Order and find that the mode of procedure provided in them for trial of members relates to trial by subordinate divisions. No method of procedure is specified in the laws of the Order for trials of members by the G. I. D. Under these circumstances, it was within the power of the G. I. D. to adopt a fair method of procedure, even though it did not conform to the method governing trials of the members before subordinate divisions. *Gray* v. *Christian Society*, 137 Mass. 329; *Spillman* v. *Supreme Council of Home Circle*, 157 Mass. 128, 31 N. E. 776.

(4) It is also contended by appellants that the G. I. D. had no right to delegate the investigation of the charges to a committee. It is asserted that the G. I. D. itself should have investigated the charges. In conventions of this character, composed of delegates from subordinate divisions, sitting triennially, it is hardly practicable to conduct investigations otherwise than through committees. This method was approved in the case of *Spillman* v. *Supreme Council of Home Circle, supra,* which was an organization quite like the Brotherhood of Locomotive Engineers. In commenting on this method of procedure in that case, Justice Allen took occasion to say: "It (referring to the Supreme Council) was, in short, a body of the highest, and apparently unrestricted, authority. The trial of members or officers of grand or subordinate councils might be had before a special committee of one or more members of the Order named by the supreme leader. This committee need not consist of members of the Supreme Council. The Supreme

Council is a body whose will is a law unto itself. It was to have original jurisdiction in all cases of its own officers and members, but no mode of procedure was provided for their trial. It would seem, therefore, that it might adopt such mode of trial as it pleased, subject only to the implied limitation that it must be fair.''

Lastly, appellants insist that they did not obtain a fair and impartial trial. On sharply conflicting evidence, the chancellor made a special finding to the contrary, which finding seems to be supported by the evidence.

No error appearing, the decree is affirmed.